**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ‖ | |
| Plaintiff, | ‖ | No. 08-CR-67-LRR |
| vs. | ‖ | **ORDER** |
| EDWARD FRANK BREWER and ROSINA ORLANTHA RHODES, | ‖ | |
| Defendants. | ‖ | |

_____

*TABLE OF CONTENTS*

*I.   INTRODUCTION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

*II.  RELEVANT PRIOR PROCEEDINGS.* . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*III. STANDARD OF REVIEW.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*IV.  ANALYSIS.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*

    *A.  Defendant Brewer's Objections.* . . . . . . . . . . . . . . . . . . . . . . . . . *3*
        *1.  Probable cause to stop Defendant Brewer's vehicle.* . . . . . . . . *3*
    *B.  Defendant Rhodes's Objections.* . . . . . . . . . . . . . . . . . . . . . . . . *5*
        *1.  Probable cause to arrest Defendant Rhodes.* . . . . . . . . . . . . . *5*
            *a.  Whether Defendant Rhodes could see the drugs.* . . . . . . *6*
            *b.  Whether Defendant Rhodes was acting in conjunction
                with Defendant Brewer in an attempt to distribute cocaine
                on October 9, 2008..* . . . . . . . . . . . . . . . . . . . . . . . . . . *7*
            *c.  Whether probable cause existed for Defendant
                Rhodes's arrest when officers initially approached her
                vehicle..* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*
        *2.  Voluntariness of Defendant Rhodes's statements..* . . . . . . . . . . *8*

*V.   CONCLUSION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *11*

## I. INTRODUCTION

The matters before the court are Defendant Edward Frank Brewer's Objections ("Brewer Objections") (docket no. 107) and Defendant Rosina Orlantha Rhodes's

Objections ("Rhodes Objections") (docket no. 84) (together, "Objections") to United States Magistrate Judge Jon S. Scoles's Report and Recommendation ("Report and Recommendation") (docket no. 61). Judge Scoles recommends the undersigned deny Defendant Brewer's Motion to Suppress ("Brewer Motion") (docket no. 40) and Defendant Rhodes's Motion to Suppress ("Rhodes Motion") (docket no. 46) (together, "Motions").

## II. RELEVANT PRIOR PROCEEDINGS

On October 21, 2008, a grand jury returned a one-count Indictment (docket no. 1) charging Defendant Brewer with three counts of distribution of crack cocaine and one count of possession with intent to distribute crack cocaine.

On November 18, 2008, a grand jury returned a Superseding Indictment (docket no. 13) adding Defendant Rhodes as a defendant. The Superseding Indictment included a new count charging both Defendants with conspiracy to distribute crack cocaine. Defendant Brewer and Defendant Rhodes plead not guilty.

On December 12, 2008, Defendant Brewer filed the Brewer Motion. On December 16, 2008, Defendant Rhodes filed the Rhodes Motion. On December 29, 2008, Judge Scoles held a hearing ("Hearing") on the Motions. On January 5, 2009, Judge Scoles issued the Report and Recommendation. On January 15, 2009, Defendant Rhodes filed the Rhodes Objections. On January 20, 2009, Defendant Brewer filed the Brewer Objections.

The court finds the Objections fully submitted and ready for decision.

## III. STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's report and recommendation, "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003); *see also* Fed. R. Crim. P. 59(b)(3) (stating "[t]he district judge must

consider de novo any objection to the magistrate judge's recommendation"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) (stating a judge "may accept, reject, or modify the recommendation receive further evidence, or resubmit the matter to the magistrate judge with instructions"). The Eighth Circuit Court of Appeals has held it is reversible error for the district court to fail to engage in a de novo review of a magistrate judge's report when such review is required. *Lothridge*, 324 F.3d at 600. Accordingly, the court reviews the Report and Recommendation de novo.

## IV. ANALYSIS

Defendant Brewer raises one objection to the Report and Recommendation. Defendant Rhodes raises two sets of objections to the Report and Recommendation. Upon de novo review of the record in its entirety, the court shall overrule them. The court adopts Judge Scoles's discussion of the facts, Part IV of the Report and Recommendation, in full. And, for the reasons set forth below, the court shall fully adopt all sections of the Report and Recommendation.

### A. *Defendant Brewer's Objections*

Defendant Brewer raises one objection to the Report and Recommendation. Specifically, Defendant Brewer argues the police did not have probable cause to stop his vehicle on September 19, 2008.

#### 1. *Probable cause to stop Defendant Brewer's vehicle*

Defendant Brewer asserts the police did not have probable cause to stop his vehicle on September 19, 2008. Defendant Brewer argues the police have proffered three different explanations for why his vehicle was stopped. While the nature of Defendant Brewer's objection is not entirely clear, it appears he asserts none of the three bases for his stop provided sufficient probable cause to stop his vehicle.

3

Defendant Brewer argues that the first reason for his stop provided by the police was that he lacked proper vehicle registration. Defendant Brewer argues this reason is invalid because he had paper plates displayed in his rear window. Defendant Brewer argues that the second reason for his stop provided by the police was that he was driving without a valid driver's license. Defendant Brewer argues that the third reason for his stop provided by the police was because an unidentified confidential informant told officers Defendant Brewer had a firearm. Defendant Brewer argues this reason is invalid because the court has not made a finding of credibility as to the confidential informant.

"It is well established that a traffic violation—no matter how minor—creates probable cause to stop the driver of a vehicle." *United States v. Linkous*, 285 F.3d 716, 719 (8th Cir. 2002). Even if the officers mistakenly believed Defendant Brewer was committing a traffic violation, a mistake of fact does not render a traffic stop invalid as long as the officer's belief was objectively reasonable. *United States v. Flores-Sandoval*, 366 F.3d 961, 962-63 (8th Cir. 2004). As long as the officers provide a valid reason for stopping a vehicle, the court will not evaluate the officer's subjective intent. *United States v. Long*, 532 F.3d 791, 795 (8th Cir. 2008).

The court holds the officers had probable cause to stop Defendant Brewer. The court finds the testimony of Agent Wernli, Agent Moyle, Officer Herbert and Agent Warner to be fully credible. Defendant Brewer was stopped because (1) the officers knew Defendant Brewer was driving the vehicle and that his driver's license was suspended in violation of Iowa Code § 321.218 and (2) because a confidential informant told officers Defendant Brewer may have possessed a gun. Officers can have more than one reason for stopping a vehicle as long as one provides a specific, sufficient basis for probable cause. Although officers ultimately decided to stop Defendant Brewer because they subjectively believed he may be armed, they could have stopped him before they had this information based on his involvement in the drug transaction. The fact that they had been informed

he may have a gun did not negate this probable cause. *See supra United States v. Flores-Sandoval*, 366 F.3d 961, 962-963.

Multiple officers observed Defendant Brewer driving immediately prior to the stop. Agent Wernli testified "I personally observed Mr. Brewer in the driver's seat and drive the van away." Tr. at 17. The officers verified that Defendant Brewer's driver's license was under suspension. Again, even if the officers had subjective reasons for stopping the vehicle, or really sought to stop the vehicle due to their belief Defendant Brewer was armed, the traffic violation provided a sufficient objective basis to initiate the stop. Furthermore, agents knew he was involved in a hand to hand drug transaction less than one hour earlier. The officers clearly had authority to conduct a traffic stop.

In sum, the officers had more than sufficient probable cause to stop Defendant Brewer's vehicle. Agents witnessed Defendant Brewer participate in a hand to hand drug transaction. The officers saw Defendant Brewer driving and confirmed he did not have a valid driver's license. The court finds sufficient probable cause to justify the stop of Defendant Brewer's vehicle. Accordingly, the Brewer Objections are overruled.

### B. *Defendant Rhodes's Objections*

Defendant Rhodes raises two sets of objections to the Report and Recommendation. Each of the sets of objections is discussed, in turn.

#### 1. *Probable cause to arrest Defendant Rhodes*

The first set of Defendant Rhodes's Objections relate to whether there was probable cause to arrest Defendant Rhodes on October 9, 2008. Specifically, Defendant Rhodes objects to (1) Judge Scoles's finding that "[t]he area where the drugs were found could be seen by Rhodes from where she had been sitting"; (2) Judge Scoles's finding that "the totality of the circumstances, viewed from the standpoint of an objectively reasonable person, support a finding that [Defendant] Rhodes was acting in conjunction with [Defendant] Brewer in an attempt to distribute crack cocaine on October 9, 2008 . . .";

5

and (3) "that probable cause existed for Rhodes'[s] arrest when the officers initially approached her vehicle." Objections at 1-2.

### *a. Whether Defendant Rhodes could see the drugs*

During Defendant Rhodes's October 9, 2008 arrest, officers found a Kohl's bag containing approximately three ounces of crack cocaine. Because the court finds there was probable cause to arrest Defendant Rhodes before this evidence was found, *see* Part B. 1. b. *infra*, the court does not need to make this finding. However, out of an abundance of caution, the court will consider this objection.

At the Hearing, the officers testified that they did not see this bag until after they approached Defendant Rhodes's vehicle; however, it was "within feet" of the area where the Burger King cup involved in the controlled buy was found two weeks earlier. Tr. at 39. Agent Wernli testified the Kohl's bag containing the crack cocaine was "within the vicinity and eyeshot of [Defendant Rhodes] . . ." Tr. at 52. Agent Wernli opined the bag was approximately 30 to 40 yards from her vehicle and, at that time of day, the parkade was bright and well-lit. Although Agent Wernli could not tell if any vehicles were blocking her view, he stated there were only "one or two or a few" vehicles in the parkade and he did not believe any of the vehicles were parked directly next to where the drugs were located. Although the officers and agents could not provide an exact size of the parkade, Agent Moyle testified, "I know you can see all the way from the northern edge to the southern edge . . [i]t's not that big of a ramp." Tr. at 104. The court does not have to rely solely on the statements of the agents. At the Hearing, Agent Wernli indicated on Exhibit B (a picture of the Lindale Mall Parkade) where the bag containing the crack cocaine was found and where Defendant Rhodes was parked. Even if Defendant Rhodes could not see the bag at all times from her vehicle, she certainly could see the area around it and would be able to tell if something was happening to the bag or if someone was approaching it. The court finds Judge Scoles correctly found Defendant Rhodes could

6

view the Kohl's bag containing the crack cocaine from her vehicle. Accordingly, this objection is overruled.

> **b.      Whether Defendant Rhodes was acting in conjunction with Defendant Brewer in an attempt to distribute crack cocaine on October 9, 2008**

Defendant Rhodes next objects to Judge Scoles's finding that she was acting in conjunction with Defendant Brewer in an attempt to distribute crack cocaine on October 9, 2008. On that day, Defendant Rhodes was observed driving from a Pizza Hut parking lot and parking in the Lindale Mall Parkade. After she had been sitting there for a while, she was approached by Defendant Brewer in another vehicle. After what appeared to be a brief conversation, Defendant Brewer drove to the other end of the mall to conduct a drug transaction.

Defendant Rhodes asserts this conduct is more consistent with mere presence and association than active assistance in an attempt to distribute crack cocaine. Defendant relies on *United States v. Everroad*, 704 F.2d 403 (8th Cir. 1983); however, the facts of *Everroad* and the instant action are easily distinguishable. In *Everroad*, the defendant was arrested after being seen with another person whom agents knew was involved in a drug transaction and was staying at a motel which was located within a 30-minute radius of where the drugs were believed to be. *Id*. at 406. However, as Judge Scoles notes, the defendant in *Everroad* had no known involvement with the target individual prior to the day of the transaction. The court in *Everroad* was limited to evidence that the defendant rode with the target past the parking lot where the transaction was to occur and was at a motel less than a half hour from the road where the target was arrested. *Id*.

Here, Defendant Brewer had previously used the van owned by Defendant Rhodes to conduct a drug transaction in the Lindale Mall Parkade. Defendant Rhodes had been observed driving Defendant Brewer before and after a drug transaction in the same location. She had also been observed dropping him off and picking him up from a drug

7

transaction. She was observed talking to Defendant Brewer immediately prior to the attempted drug transaction on October 9, 2008. The facts of the instant action indicate more than mere presence and association—they indicate Defendant Rhodes was working in conjunction with Defendant Brewer in the October 9, 2008 attempt to distribute crack cocaine. Therefore, probable cause to arrest Defendant Rhodes existed. Defendant Rhodes was not just in physical proximity to a crime. She was a routine fixture in a series of controlled buys involving Defendant Brewer. Accordingly, this objection is overruled.

    *c.*  *Whether probable cause existed for Defendant Rhodes's arrest when officers initially approached her vehicle*

Third, Defendant Rhodes objects to Judge Scoles's finding that probable cause existed for Defendant Rhodes's arrest when the officers initially approached her vehicle. For the reasons set forth in Part B. 1. b *supra*, the court finds probable cause existed for Defendant Rhodes's arrest when officers initially approached her vehicle.

"'To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause.'" *United States v. Jones*, 535 F.3d 886, 890 (8th Cir. 2008) (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)). The court does not deem it necessary to consider evidence after the officers initially approached Defendant Rhodes's vehicle. Based on the totality of the circumstances at the time the officers approached Defendant Rhodes's vehicle on October 9, 2008, the court finds the information available to the officers and agents "was sufficient to warrant a prudent man in believing that [Defendant Rhodes] had committed [and] was committing an offense." *United States v. Taylor*, 106 F.3d 801, 803 (8th Cir. 1997). Accordingly, this objection is overruled.

  *2.*  *Voluntariness of Defendant Rhodes's statements*

Finally, Defendant Rhodes Objects to Judge Scoles's finding that "[t]he evidence

8

offered at the [ . . .] [H]earing does not support a finding that the officers 'deliberately preyed upon the maternal instincts of [Defendant] Rhodes'" and, as such, her statements were not made voluntarily. Rhodes Objections at 2 (citations omitted). The court views the voluntariness of statements "in light of the totality of the circumstances to determine if the pressures exerted by the authorities overwhelmed the defendant's will." *United States v. Robinson*, 20 F.3d 320, 322 (8th Cir. 1994) (citing *United States v. Jorgenson*, 871 F.2d 725, 729 (8th Cir. 1989)). "A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." *United States v. LeBrun*, 363 F.3d 715 (8th Cir. 2004).

The court finds, in light of the totality of the circumstances, Defendant Rhodes's statements were voluntary. She was provided with oral *Miranda* warnings twice. She was allowed to contact her mother twice while in custody to make arrangements for her children. She signed a written consent for the search of her vehicle and residence. None of the officers noted any indication she was under the influence of alcohol or drugs. There was no evidence Defendant Rhodes lost her composure while being questioned. The only indication of threats or force whatsoever was the agents' discussion with her regarding her children.

In support of Defendant Rhodes's argument that her will was overcome by threats her children would be taken away, Defendant Rhodes relies on *United States v. Tingle*, 658 F.2d 1332 (9th Cir. 1981), for the proposition that the officers preyed on her maternal instincts. The court notes, however, that this is the same case and argument Defendant Rhodes relied on in the Rhodes Motion and Judge Scoles accurately distinguished in the Report and Recommendation. Defendant Rhodes also urges the court to consider *United States v. Alcarez-Mora*, 246 F. Supp. 2d 1146 (D. Kan. 2003), *Lynumn v. Illinois*, 372 U.S. 528 (1963) and *United States v. Barnett*, 814 F. Supp. 1449, 1456 (D. Alaska 1992)

9

in support of this argument. As a preliminary matter, the court is not bound by the decisions of other district courts. And, again, both *Alcarez-Mora* and *Lynumm* have already been relied upon by Defendant Rhodes and accurately distinguished by Judge Scoles in the Report and Recommendation.

Further, the court finds the case at present is easily distinguishable from the cases cited by Defendant. Defendant Rhodes was able to call her mother on two occasions to make arrangements for her children. The record indicates it was Defendant Rhodes who repeatedly asked the officers what would happen to her children. The court agrees with Judge Scoles that the officers simply pointed out the obvious: if Defendant Rhodes is convicted she will go to prison and, as such, her contact with her children will be effected. The court finds the officers' tactics did not amount to coercive behavior or threats. *See Robinson*, 20 F.3d at 322 ("Coercive police activity is a necessary predicate to finding that a confession is not voluntary in the constitutional sense"). The officers never threatened (1) to remove her children or that she would never see them again if she did not cooperate, *Alcarez-Mora*, 246 F.Supp.2d at 1154-55, (2) to cut off state financial aid for the child if she did not cooperate or that after she got out of prison her children would be given to strangers, *Lynumn*, 372 U.S. at 531, or (3) that she would not get to see her children for a while but promise her leniency if she did cooperate, *Tingle*, 658 F.2d at 1336. In fact, following the questioning, Defendant Rhodes signed a written consent form indicating her consent was made voluntarily and without threats or promises and was released.

The court agrees with Judge Scoles's finding that the officers did not deliberately prey on Defendant Rhodes's maternal instincts. Rather, the court finds Defendant Rhodes's will was not overcome and her statements were voluntary. Accordingly, the objection is overruled.

## V. CONCLUSION

In light of the foregoing analysis, the court **ORDERS**:

(1) The Brewer Objections (docket no. 107) are **OVERRULED** and the Brewer Motion (docket no. 40) is **DENIED**;

(2) The Rhodes Objections (docket no. 84) are **OVERRULED** and the Rhodes Motion (docket no. 46) is **DENIED**; and

(2) The Report and Recommendation (docket no. 61) is **ADOPTED**.

**IT IS SO ORDERED.**

**DATED** this 23rd day of January, 2009.

*[Signature]*

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA